| | AUSA: | Stephen Hiyama | Telephone: | (313) 226-9674 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Agent: | Gregory Waterson | Telephone: | (313) 515-8996 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| United States of America | | |
|---|---|---|
| v. | | Case: 2:21−mj−30141 |
| Christoper Dominic Niebel | Case No. | Assigned To : Unassigned |
| | | Assign. Date : 3/23/2021 |
| | | Description: U.S. V. NIEBEL (CMP)(MEV) |

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 2020 to August 2020___ in the county of ___Wayne___ in the ___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 1343 | Wire Fraud |
| 18 U.S.C § 1028 A | Aggravated Identity Theft |

This criminal complaint is based on these facts:
Please see attached affidavit

☑ Continued on the attached sheet.

Gregory Waterson
Digitally signed by Gregory Waterson
Date: 2021.03.18 08:37:56 -04'00'

*Complainant's signature*

Gregory Waterson - Special Agent DOL-OIG
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: March 23, 2021

*Judge's signature*

City and state: Detroit, MI

Kimberly Altman - U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Gregory D. Waterson, being duly sworn, depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent for the United States Department of Labor, Office of Inspector General (DOL-OIG), and have been so employed since December 2015. Prior to this assignment, I was a Special Agent with the United States Secret Service (USSS) for seven years. I am currently assigned to the Detroit Field Office of the DOL-OIG. As an USSS and DOL-OIG Special Agent, I have conducted numerous investigations involving violations of federal law, including, but not limited to, violations of Titles 18 and 29 of the United States Code. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations and make arrests of offenses enumerated in Title 18 and Title 29 of the United States Code. I have conducted approximately eight investigations related to unemployment insurance fraud schemes. I have assisted in investigating approximately fifteen unemployment insurance fraud schemes.

2. This is joint investigation conducted by the DOL-OIG, the Internal Revenue Service – Criminal Investigation, the United States Secret Service, and the State of Michigan Unemployment Insurance Agency (Michigan UIA).

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint and arrest warrant for **CHRISTOPHER DOMINIC NIEBEL**. Based on the information set forth in this affidavit, I submit that there is probable cause to believe that Niebel executed a scheme to defraud and obtain state and federally funded unemployment benefits by means of false and fraudulent pretenses and representations and did thereby commit several federal crimes, including but not limited to wire fraud (18 U.S.C. § 1343) and aggravated identity theft (18 U.S.C. § 1028A).

4. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant; therefore, this affidavit does not contain every fact that I have learned during the course of this investigation, but rather only those sufficient to establish probable cause to believe that **CHRISTOPHER DOMINIC NIEBEL** committed the crimes referred to above in Paragraph 3. The information contained in this affidavit is based upon my personal knowledge, training, and experience, as well as the combined knowledge, training, and experience of other law enforcement officers and agents with whom I have had discussions.

## UNEMPLOYMENT BENEFITS GENERALLY

5. The Social Security Act of 1935 created the federal-state unemployment insurance (UI) system. The system provides benefits to individuals who are unemployed through no fault of their own. Unemployment insurance payments, or

unemployment benefits, are intended to provide temporary financial assistance to unemployed workers who meet certain eligibility requirements.

6. State unemployment taxes on private employers provide the funding for regular unemployment benefits. Federal and state unemployment taxes on private employers provide the funding for extended unemployment benefits. And federal unemployment taxes on private employers provide the funding to pay the administrative costs of the UI system and to enable the federal government to loan funds to underfunded state UI agencies.

7. The UI system is administered by the U.S. Department of Labor and state UI agencies. In Michigan, the relevant state UI agency is the Michigan Unemployment Insurance Agency (Michigan UIA).

### PANDEMIC-RELATED UNEMPLOYMENT BENEFITS

8. The coronavirus pandemic significantly slowed economic activity in the United States and resulted in unemployment levels that substantially exceeded normal levels of unemployment. The federal government addressed this situation by enacting laws, beginning in March 2020, designed to support the operations of state unemployment systems and provide additional federally funded unemployment benefits. The Families First Coronavirus Response Act (FFCRA) was signed into law on March 18, 2020. Division D of the FFCRA provided

financial assistance and administrative support to state UI agencies to help them respond to the additional demands caused by the coronavirus pandemic.

9. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020. The CARES Act provided additional federal funding for unemployment benefits for workers affected by the pandemic, including workers who were not ordinarily eligible for unemployment benefits. One CARES Act program is the Federal Pandemic Unemployment Compensation (FPUC) program. The FPUC program allowed eligible individuals who were collecting certain UI benefits, including regular UI benefits, to receive an additional $600 in federally funded benefits per week for any period of unemployment extending through July 31, 2020. The FPUC program was revived by Congress on December 27, 2020, through the Continued Assistance for Unemployed Workers Act of 2020 (Continued Assistance Act) and provides $300 in unemployment benefits per week for any period of unemployment from the week ending January 2, 2021, through the week ending March 13, 2021.

10. Another CARES Act program is the Pandemic Emergency Unemployment Compensation (PEUC) program, which provides up to 13 weeks of additional federally funded benefits to those who have exhausted benefits under regular unemployment compensation or other programs for any period of unemployment extending through the week ending December 26, 2020. The PEUC

- 4 -

program was extended by the Continued Assistance Act to cover any period of unemployment from the week ending January 2, 2021, through the week ending March 13, 2021.

11. The third CARES Act unemployment-benefit program is the Pandemic Unemployment Assistance (PUA) program, which provides federally funded benefits to self-employed workers, independent contractors, and others not ordinarily eligible for unemployment benefits. Like the PEUC program, the PUA program was set to expire the week ending December 26, 2020, but was extended by the Continued Assistance Act to cover any period of unemployment from the week ending January 2, 2021, through the week ending March 13, 2021.

### THE UNEMPLOYMENT-BENEFIT PROCESS

12. Normally (in the absence of fraud), an unemployed worker initiates an unemployment insurance (UI) claim. This can be accomplished by submitting a claim in person, over the telephone, or online. Currently, the overwhelming majority of UI claims are filed online. In order to be eligible for UI benefits, the worker must demonstrate a certain level of earnings in the several quarters immediately preceding the beginning of his or her unemployment. The amount of unemployment benefits that a UI claimant might be eligible for depends on a variety of factors, including but not limited to the length of his or her previous

employment, the amount of wages he or she earned, and the state in which he or she resides.

13. Claims filed online are usually filed from a desktop or laptop computer. Ordinarily, this means that all contact between the claimant and state UI agency will be electronic. Information retained by state UI agencies about contacts between those agencies and UI claimants includes the Internet protocol (IP) address associated with the electronic devices used by claimants to file or supplement their claims or access their UI accounts. An IP address (under IP version 4 (IPv4)) is a unique series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178), that is used to identify computers and other electronic devices connected to the Internet. Ordinarily, the IP address assigned by an Internet service provider (ISP) to a subscriber is assigned to the subscriber's router. A router is the hub of a wireless (Wi-Fi) home computer network, enabling a subscriber to connect multiple electronic devices in his or her house or apartment (e.g., laptops, tablets, smartphones) wirelessly to the Internet through one physical Internet connection. I have learned that an IP address assigned by Comcast, which is an ISP, to a home router tends to remain unchanged absent an intervening event, such as a failure to pay a monthly bill.

14. Once a UI claim is filed by an unemployed worker, the state UI agency will either approve the claim or reject it. If the state UI agency approves a UI

claim, the claimant will receive UI benefits. But he or she is required thereafter to periodically re-certify the claim via telephone or Internet. The claimant must also periodically certify that he or she is still unemployed and actively seeking work.

15. One way in which UI benefits are provided to a claimant in Michigan is through the use of a debit card issued by the Bank of America, NA which is mailed to the claimant through the U.S. Postal Service. The unemployment benefits are loaded onto the debit card electronically. Additional UI benefits can be loaded onto the debit card subsequently, also by electronic means.

16. Alternatively, a claimant can provide the state UI agency with a bank routing number and bank account number so his or her UI benefits can be transferred via electronic funds transfers (EFTs) into his or her bank account. These EFTs originate from one or more accounts maintained by the Michigan UIA at Bank of America, NA. Bank of America, NA is a subsidiary of Bank of America Corporation, a bank holding and financial holding company headquartered in Charlotte, North Carolina. All EFTs of UI benefits to Michigan UI claimants involve the transmission of electronic signals through one of Bank of America's two data centers, which are located in Virginia and Texas, and from those data centers to banks located in Michigan. These are interstate wire communications.

17. In an effort to prevent and otherwise inhibit fraud, state UI agencies capture and retain certain data surrounding the interaction between a claimant and

the UI system. Each time a UI account is accessed electronically by a claimant, it creates a digital footprint of sorts. Although states utilize their own unique systems, many times the data that are recorded and retained include the Internet protocol (IP) address associated with an electronic device accessing a UI account, as explained above in Paragraph 13. Other data that are recorded and retained include the dates and times a UI account was accessed by an electronic device. State UI agency systems can tie this information to information about a claimant (or someone impersonating the claimant) provided by the claimant (or someone impersonating the claimant), such as the claimant's name, address, social security number, and banking information. It is through the analysis of this data that state UI agencies and investigating agents can identify fraudulent trends and tendencies associated with certain claims.

## PROBABLE CAUSE

18. In May 2020, Michigan UIA's Fraud Division identified Internet protocol (IP) address 68.37.20.62 as an IP address from which someone had filed, accessed, and/or modified over 100 UI claims and accounts between March 2020 and May 2020. Michigan UIA's Fraud Division learned that the Internet service provider (ISP) for IP address 68.37.20.62 was Comcast. Comcast provided the subscriber information for IP address 68.37.20.62. Comcast records showed that the subscriber was CHRISTOP[HER] NIEBEL; that the person to be billed was

CHRISTOPHER NIEBEL; that the billing/service address was 6601 Park Ave Ste 7, Allen Park, MI 48101; and that the subscriber's phone number was 313-438-6247.

19. In May 2020, Michigan UIA's Fraud Division identified a different IP address, 68.43.254.142, as an IP address from which someone had filed, accessed, and/or modified dozens of UI claims between March 2020 and May 2020, many involving the same UI accounts referred to above in Paragraph 18. Michigan UIA's Fraud Division learned that the ISP for IP address 68.43.254.142 was Comcast. Comcast provided the subscriber information for IP address 68.43.254.142. Comcast records showed that the subscriber was an individual whose initials are R.M. and that the service address was 15255 Warwick Avenue, Allen Park, MI 48101.

20. According to records of the Michigan Secretary of State, the address on CHRISTOPHER NIEBEL'S Michigan driver's license in June 2020 was 15255 Warwick Avenue, Allen Park, MI 48101.

21. According to a law enforcement database, the subscriber for phone number 313-438-6247 was "Tax Guy Chris." This same database provided a possible domain name for Tax Guy Chris as taxguychris.com. In or around June 2020, I visited www.taxguychris.com. In the webpage's "About Us" section, the founder is listed as CHRIS NIEBEL. The section states in part, "Chris Niebel has

been a certified tax preparer since 2009. He started out as a manager with Liberty Tax Service in River Rouge, MI, before founding Tax Guy Chris in 2013."

22. According to the Lexis-Nexis public records database, an assumed name certificate was filed in Wayne County, Michigan, in March 2013 for "Tax Guy Chris." The certificate was filed by CHRISTOPHER NIEBEL, 15255 Warwick Ave., Allen Park, MI 48101.

23. According to corporate records of the Michigan Department of Licensing and Regulatory Affairs, "Tax Guy Chris, LLC" was organized in August 2014. The address of its registered office was 6601 Park Avenue, Suite 7, Allen Park, MI 48101.

24. In May 2020, surveillance was conducted at 6601 Park Avenue in Allen Park, Michigan, a two story, multi-office building that appeared to be occupied by several different businesses. The entrance doors to the office building included a decal for "Tax Guy Chris." The decal listed a phone number for Tax Guy Chris as 313-438-6247, the same number mentioned in Paragraphs 18 and 21. On the second floor of the office building, on the office door affixed with the number "7," another "Tax Guy Chris" decal was affixed.

25. In August 2020, Michigan UIA's Fraud Division provided me with an updated list of suspected fraudulent UI claims associated with CHRISTOPHER NIEBEL. The UI claims were associated with NIEBEL through the two IP addresses

described above in Paragraphs 18 and 19 and/or various other indicators, such as use of the same email address(es), the same phone number(s), and similar claimant "user names." Michigan UIA's Fraud Division found that CHRISTOPHER NIEBEL was associated with approximately 119 different fraudulent UI claims. Of these fraudulent UI claims, approximately 111 were successful and received some UI benefits. The total amount of benefits paid by UIA on these approximately 111 successful UI claims was approximately $849,000.00. These benefits included regular UI benefits as well as pandemic-related UI benefits provided through the CARES Act.

26. Between approximately June 2020 and September 2020, I subpoenaed multiple financial institutions for the records of accounts that had received UI benefits through one or more of the 111 fraudulent UI accounts referred to above in Paragraph 25. As mentioned above in Paragraph 16, one way a claimant can receive his or her UI benefits is to provide Michigan UIA with a routing number and bank account number to enable the UI benefits to be directly deposited. This would cause UI benefits to be sent to the appropriate financial institution and bank account via electronic funds transfers (EFTs) from an account of the Michigan UIA at Bank of America, NA, as explained above in Paragraph 16.

27. In all, I received the records of approximately 47 different bank accounts. These bank accounts were associated with approximately 49 different

- 11 -

fraudulent UI accounts. Of these approximately 47 different bank accounts, approximately 28 accounts listed the accountholder as CHRISTOPHER NIEBEL. Of these approximately 28 accounts, approximately 26 listed the accountholder's address as 15255 Warwick Avenue, Allen Park, MI 48101.

*Victim A.M.*

28. According to Michigan UIA's Fraud Division, on or about May 13, 2020, a UI claim was filed in the name of an individual whose initials were A.M. The claim was filed using IP address 68.37.20.62. A.M.'s address was an address in metropolitan Detroit. Income verification documents submitted with A.M.'s UI claim included an IRS Form 1099 that listed A.M.'s employer as Healthy Homes of Michigan. The claim directed UI benefits to be directly deposited into account no. xxxxxxxx2499 at Citizen's Bank. A review of subpoenaed documents provided by Citizen's Bank for account no. xxxxxxxx2499 listed the accountholder as CHRISTOPHER NIEBEL. The account opening documents showed that this account was opened on or about May 10, 2020. The address listed for CHRISTOPHER NIEBEL was 15255 Warwick Avenue, Allen Park, MI 48101. Account statements for account no. xxxxxxxx2499 showed that on or about May 14, 2020, $7,944.00 was transferred into the account from Michigan UIA.

29. A.M. was located through the Social Security number used on the UI claim made in her name. In February 2021, A.M. was interviewed. A.M. resides in

Oklahoma and has never filed for UI benefits in Michigan. A.M. had not provided anyone with permission to file a UI claim on her behalf in Michigan or to otherwise use her personally identifiable information. A.M. has never heard of Healthy Homes of Michigan and has never worked for a company by that name.

*Victim S.N.*

30. According to Michigan UIA's Fraud Division, on or about May 10, 2020, a UI claim was filed in the name of an individual whose initials were S.N. The claim was filed using IP address 68.37.20.62. S.N.'s address was an address in metropolitan Detroit. Income verification documents submitted with S.N.'s UI claim included an IRS Form 1099 that listed S.N.'s employer as Healthy Homes of Michigan. The claim directed UI benefits to be directly deposited into account no. xxxxxxxx9438 at Citizen's Bank. A review of subpoenaed documents provided by Citizen's Bank for account no. xxxxxxxx9438 listed the accountholder as CHRISTOPHER NIEBEL. The account opening documents showed that this account was opened on or about May 7, 2020. The address listed for CHRISTOPHER NIEBEL was 15255 Warwick Avenue, Allen Park, MI 48101. Account statements for account no. xxxxxxxx9438 showed that on or about May 13, 2020, $7,582.00 was transferred into the account from Michigan UIA.

31. S.N. was located through the Social Security number used on the UI claim made in her name. In January 2021, S.N. was interviewed. S.N. resides in

California and has never filed for UI benefits in Michigan. S.N. had not provided anyone with permission to file a UI claim on her behalf in Michigan or to otherwise use her personally identifiable information. S.N. has never heard of Healthy Homes of Michigan and has never worked for a company by that name.

*Victim E.G.*

32. According to Michigan UIA's Fraud Division, on or about May 17, 2020, a UI claim was filed in the name of an individual whose initials were E.G. The claim was filed using IP address 68.37.20.62. E.G.'s address was an address in metropolitan Detroit. Income verification documents submitted with E.G.'s UI claim included an IRS Form 1099 that listed E.G.'s employer as Healthy Homes of Michigan. The claim directed UI benefits to be directly deposited into account no. xxxxxxxx2921 at Citizen's Bank. A review of subpoenaed documents provided by Citizen's Bank for account no. xxxxxxxx2921 listed the accountholder as CHRISTOPHER NIEBEL. The account opening documents showed that this account was opened on or about May 6, 2020. The address listed for CHRISTOPHER NIEBEL was 15255 Warwick Avenue, Allen Park, MI 48101. Account statements for account no. xxxxxxxx9438 showed that on or about May 14, 2020, $7,944.00 was transferred into the account from Michigan UIA.

33. E.G. was located through the Social Security number used on the UI claim made in her name. In December 2020, E.G. was interviewed. E.G. resides in

- 14 -

California and has never filed for UI benefits in Michigan. E.G. had not provided anyone with permission to file a UI claim on her behalf in Michigan or to otherwise use her personally identifiable information. E.G. has never heard of Healthy Homes of Michigan and has never worked for a company by that name.

## CONCLUSION

34. In light of the information set forth above, I submit that there is probable cause to believe that **CHRISTOPHER DOMINIC NIEBEL** committed wire fraud, in that he did execute a scheme to defraud and obtain state and federally funded unemployment benefits by means of false and fraudulent pretenses and representations and did in furtherance of the scheme knowingly cause the transmission of interstate communications directly or indirectly from the States of Texas or Virginia to the Eastern District of Michigan, in violation of 18 U.S.C. § 1343. I also submit that there is probable cause to believe that **CHRISTOPHER DOMINIC NIEBEL** committed the crime of aggravated identity theft, in that, during and in relation to his wire fraud offenses, he did, in the Eastern District of Michigan, knowingly possess and use without lawful authority numerous means of identification of other individuals, including but not necessarily limited to names

and Social Security numbers, in violation of 18 U.S.C. § 1028A.

_____
Gregory D. Waterson
Special Agent, OIG
U.S. Department of Labor

*Digitally signed by Gregory Waterson
Date: 2021.03.18 08:39:06 -04'00'*

Sworn to before me and signed in my presence and/or by reliable electronic means this _____ day of March 2021.

_____
Kimberly Altman-
United States Magistrate Judge

Dated;  March 23, 2021