UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-

D-1   CHRISTOPHER D. NIEBEL,

        Defendant.
_____/

2:21-cr-20553
Assigned To : Goldsmith, Mark A.
Assign. Date : 8/27/2021

V<small>IO</small>:  18 U.S.C. § 1343
       18 U.S.C. § 1028A

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### GENERAL ALLEGATIONS

1. The coronavirus pandemic significantly slowed economic activity in the United States and resulted in unemployment levels that substantially exceeded normal levels of unemployment. The federal government addressed this situation by enacting laws, beginning in March 2020, designed to support the operations of state unemployment insurance systems and provide additional federally funded unemployment benefits.

2. The Families First Coronavirus Response Act (FFCRA) was signed into law on March 18, 2020. Division D of the FFCRA provided financial assistance

and administrative support to state UI agencies to help them respond to the additional demands caused by the coronavirus pandemic.

2. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law on March 27, 2020. The CARES Act provided additional federal funding for unemployment benefits for workers affected by the pandemic, including workers who were not ordinarily eligible for unemployment benefits. The CARES Act established these three programs:

- The Federal Pandemic Unemployment Compensation (FPUC) program: the FPUC program allowed eligible individuals who were collecting certain UI benefits, including regular UI benefits, to receive an additional $600 in federally funded benefits per week for any period of unemployment extending through July 31, 2020. The FPUC program was revived by Congress in late December 2020 and is funded through September 2021.

- The Pandemic Emergency Unemployment Compensation (PEUC) program: the PEUC program provided up to 13 weeks of additional federally funded benefits to those who had exhausted benefits under regular unemployment compensation or other programs. The PEUC program is funded through September 2021.

- The Pandemic Unemployment Assistance (PUA) program; the PUA program provided federally funded benefits to self-employed workers, independent contractors, and others not ordinarily eligible for unemployment benefits. The PUA program is funded through September 2021.

3. At all times relevant to this Information, an unemployed worker initiated an unemployment insurance (UI) claim by submitting the claim in person, over the telephone, or online. The overwhelming majority of UI claims are filed online. Claims filed online are usually filed from desktop or laptop computers. Ordinarily, this means that all contacts and communications between the claimant and state UI agency are electronic.

4. In order to be eligible for UI benefits, a worker is required to demonstrate a certain level of earnings in the several quarters immediately preceding the beginning of his or her unemployment.

5. Once a UI claim is filed by an unemployed worker, the state UI agency will either approve the claim or reject it. If the state UI agency approves a UI claim, the claimant will receive UI benefits. But he or she is required thereafter to periodically re-certify the claim and periodically certify that he or she is still unemployed and actively seeking work.

6. In Michigan, the federal-state unemployment insurance system is administered by the Michigan Unemployment Insurance Agency (UIA). The Michigan UIA provides UI benefits to claimants in one of two ways: UI benefits can be loaded onto a debit card issued by the Bank of America, NA, which is mailed to the claimant. Alternatively, UI benefits can be transferred via electronic funds transfers (EFTs) to a bank account designated by the claimant. These EFTs

originate from one or more accounts maintained by the Michigan UIA at Bank of America, NA.

7.  At all times relevant to this Information, CHRISTOPHER D. NIEBEL resided in Allen Park, Michigan.

### SCHEME TO DEFRAUD

8.  From February 2020 through approximately August 2020, in the Eastern District of Michigan and elsewhere, **CHRISTOPHER D. NIEBEL**, defendant herein, did knowingly plan and carry out a scheme to defraud the federal-state unemployment insurance (UI) system in Michigan and obtain and deprive it of money and property by means of false and fraudulent pretenses and representations.

9.  It was a part of the scheme that CHRISTOPHER NIEBEL would obtain the personally identifiable information (PII) of numerous individuals without their knowledge or consent. The PII included names, dates of birth, and Social Security numbers.

10.  It was also a part of the scheme that CHRISTOPHER NIEBEL would use the PII of those individuals to submit online claims in their names to the Michigan UIA for UI benefits. None of these individuals was eligible to receive UI benefits from the Michigan UIA, and none of them had given their consent or authorization

to anyone to file UI claims in their names. Many of these individuals resided outside of Michigan.

11. It was also a part of the scheme that CHRISTOPHER NIEBEL would open dozens of bank accounts in the names of individuals whose PII he had unlawfully obtained and in his own name. NIEBEL would use addresses in metropolitan Detroit as the addresses of the accountholders. And he would direct the Michigan UIA to send the UI benefits to those bank accounts, all of which he controlled, via electronic fund transfers.

12. It was also a part of the scheme that CHRISTOPHER NIEBEL would use the UI benefits to pay for his personal expenses through the use of debit cards tied to those bank accounts and with the cash he withdrew from those bank accounts through ATMs. Those expenses were for goods and services that included but were not limited to food, transportation, Michigan lottery tickets, payments to collection agencies, casino gambling, and the goods and services he paid for with cash.

13. CHRISTOPHER NIEBEL opened approximately 120 separate fraudulent UI accounts with the Michigan UIA. The total amount of UI benefits paid to NIEBEL through these fraudulent UI accounts was approximately $850,000.00. These UI benefits included regular UI benefits as well as federal pandemic-related UI benefits provided through the CARES Act.

## COUNT 1
### (18 U.S.C. § 1343 – Wire Fraud)

D-1  CHRISTOPHER D. NIEBEL

14. The allegations set forth above in Paragraphs 1-13 are hereby realleged and incorporated by reference.

15. On numerous occasions during the course of his scheme and in furtherance of his scheme, which began in February 2020 and continued through approximately August 2020, **CHRISTOPHER D. NIEBEL**, defendant herein, did knowingly cause electronic fund transfers (EFTs) to be transmitted in interstate commerce from one or more accounts maintained by the Michigan UIA at Bank of America, NA to banks located in the Eastern District of Michigan via Bank of America data centers located in the States of Virginia and Texas.

All in violation of Section 1343 of Title 18 of the United States Code.

## COUNT 2
### (18 U.S.C. § 1028A – Aggravated Identity Theft)

D-1  CHRISTOPHER D. NIEBEL

16. From February 2020 through approximately August 2020, in the Eastern District of Michigan and elsewhere, **CHRISTOPHER D. NIEBEL**, defendant herein, did, during and in relation to the wire fraud offense alleged in Count 1, knowingly transfer, possess, and use without lawful authority numerous means of

identification of other individuals, in violation of Section 1028A(a)(1) of Title 18 of the United States Code.

### FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

17. The allegations set forth above in Paragraphs 1-16 are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461.

18. As a result of the forgoing violation of 18 U.S.C. § 1343, as set forth in Count 1 of this Information, defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation.

19. *Substitute Assets*:  Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), the United States of America shall be entitled to forfeiture of substitute property up to the value of the above forfeitable property if, by any act or omission of the defendant, the above forfeitable property or any portion thereof

    A.    cannot be located upon the exercise of due diligence;

    B.    has been transferred or sold to, or deposited with, a third party;

    C.    has been placed beyond the jurisdiction of the court;

    D.    has been substantially diminished in value; or

      E.    has been commingled with other property which cannot be divided without difficulty.

                                SAIMA S. MOHSIN
                                Acting United States Attorney

                                s/John K. Neal
                                JOHN K. NEAL
                                Assistant United States Attorney
                                Chief, White Collar Crime Unit

                                s/Stephen L. Hiyama
                                STEPHEN L. HIYAMA
                                Assistant United States Attorney
                                211 West Fort Street, Suite 2001
                                Detroit, Michigan  48226
                                phone:  313-226-9674
                                email:  stephen.hiyama@usdoj.gov

Date:  August 27, 2021                bar no.: P32236

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

### Companion Case Information

**Companion Case Number:**

This may be a companion case based upon LCrR 57.10 (b)(4)[1]:

**Judge Assigned:**

☐ Yes  ☒ No

**AUSA's Initials:** SLH

**Case Title:** USA v. CHRISTOPHER D. NIEBEL

**County where offense occurred:** Wayne

**Check One:** ☒ Felony  ☐ Misdemeanor  ☐ Petty

___ Indictment/ ___ Information --- **no** prior complaint.
___ Indictment/ ✓ Information --- based upon prior complaint [Case number: 21-mj-30141 ]
___ Indictment/ ___ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

### Superseding Case Information

**Superseding to Case No:** _____  **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

August 27, 2021
Date

Stephen L. Hiyama
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9674
Fax: 313-226-0816
E-Mail address: stephen.hiyama@usdoj.gov
Attorney Bar #: P32236

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.